UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ALBERTO OLMEDA,
Individually and on Behalf of All Other
Persons Similarly Situated,

Plaintiff,

v.

AM BROADBAND, LLC,

Defendant.

C. A. No. 06-30051-KPN

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff Alberto Olmeda respectfully submits this memorandum of law in support of his Motion for Class Certification. For the reasons set forth below, the Court should grant Plaintiff's motion and certify a class of all persons who worked for Defendant as a Cable Technician in Massachusetts between August 10, 2005 and June 6, 2008 (the "Massachusetts Class").

## INTRODUCTION

In this action, Plaintiff Alberto Olmeda seeks to recover unpaid overtime compensation owed by Defendant to him and all other persons who were employed by Defendant as a Cable Technician between August 10, 2005 and the present. Count I of the current complaint[1] is brought by Plaintiff pursuant to the Fair Labor Standards Act, 29 U.S.C. § 207 *et seq.* ("FLSA"), on behalf of himself and all other persons who worked for Defendant as a Cable Technician during that period.

---

[1] Plaintiff has filed a motion for leave of Court to file a Third Amended Complaint to add the owners of AM Broadband as individual defendants and to add individual state law overtime claims under Maryland, Connecticut and New York state law on behalf of the members of the FLSA class who worked for Defendant in those states. *See* Dkt. No. 106. That motion is being briefed and will be heard at the June 11 hearing along with this motion and the parties' cross-motions for summary judgment.

The present motion seeks certification of the Massachusetts Class under Count II of the Complaint. In Count II, Plaintiff alleges that Defendant failed to pay overtime compensation to the Massachusetts Class, including himself, in violation of M.G.L. c. 151, §§ 1A, 1B. Defendant has not disputed that it did not pay Plaintiff and the Massachusetts Class overtime. Rather, Defendant has argued that its Cable Technicians were not entitled to overtime in light of the motor carrier exemption to the FLSA and Massachusetts law. *See* Ex. A to the Affidavit of Adam M. Stewart ("Stewart Aff."), pp. 15-16. Plaintiff alleges that Defendant's failure to pay overtime compensation to the Massachusetts Class was willful, requiring Defendant to pay treble damages for such violations.

Plaintiff requests that the Court exercise supplemental jurisdiction over the state law claims of the Massachusetts class, an issue that is left to the discretion of the trial court. *Grispino v. New England Mut. Life Ins. Co.*, 358 F.3d 16, 18 (1st Cir. 2004). In this district, the courts routinely exercise supplemental jurisdiction over state law overtime claims in connection with claims under the FLSA. *See, e.g., McLaughlin v. Liberty Mutual Ins. Co.*, 224 F.R.D. 304, 308, 313 (D. Mass. 2004); *Wise v. Patriots Resorts Corp.*, No. 04-30091-MAP, 2006 WL 6110885, *2-3 (D. Mass. Feb. 15, 2006); *McLaughlin v. Harbor Cruises LLC*, No. 06-11299-GAO, 2009 WL 890099, at *2 (D. Mass. Mar. 31, 2009); *Campbell v. Entergy Nuclear Operations, Inc.*, No. 05-11951-JLT (Memorandum and Order dated August 7, 2007) (unpublished). Under Massachusetts law, persons wishing to pool resources in a representative action seeking overtime pay must file a Rule 23 class action, in which the plaintiff may advance claims on behalf of all employees similarly situated, regardless of whether they affirmatively decide to opt into the case. However, employees can opt out of the case pursuant to Rule

23(c)(2)(B) should they decide they do not wish to be members of the certified class.  Thus, no employee will be required to advance a claim against his or her will.

The distinction between the state and federal representative actions (opt-out v. opt-in) is significant, because the Rule 23 approach is more accommodating to an employee who fears reprisal from the employer if he or she were to affirmatively opt into the case under the FLSA. *See, e.g., Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2000 WL 1774091, *4 (N.D. Ill. Dec. 1, 2000) (certifying companion state law claim to FLSA proceedings and noting that "availability of the FLSA action" did not cure the problem of an employee's potential inhibition to join a FLSA action because of the "possibility of retaliation" because "the nature of the economic dependency involved in the employment relationship is inherently inhibiting").

Thus, although the federal and state statutory schemes are quite similar, employees often invoke the class action mechanism of Rule 23 in addition to the collective action provisions of the FLSA to obtain similar relief for employees who are reluctant to affirmatively join in the FLSA claim.  Recognizing the judicial economies in litigating the federal and state statutory overtime claims in a single proceeding (which require essentially the same offers of proof to be applied to similar if not identical legal standards), courts routinely certify such state law overtime claims under Rule 23 as companion claims to FLSA proceedings:

> Both claims raise the same basic grievance:  that plaintiffs were not paid the amount required under FLSA or under [state law]. Resolving the [state law] claims along with the FLSA claims will not be unduly burdensome, and is encouraged by the Supreme Court precedent. . . . In this case, the essential facts and issues are likely to be the same and pre-trial proceedings are not likely to be materially more burdensome, nor is it likely that a trial will be materially prolonged. . . .

*Beltran-Benitez v. Sea Safari, Ltd.*, 180 F. Supp. 2d 772, 774 (E.D.N.C. 2001) (certifying companion state law claim to FLSA collective action proceedings) (citations and internal quotation marks omitted); *see also McLaughlin v. Liberty Mut. Ins. Co.,* 224 F.R.D. 304, 312 (D. Mass. 2004) ("Resolution of common [FLSA and Massachusetts state law] issues in a single forum will promote judicial economy and uniformity of outcome."); *Wise*, 2006 WL 6110885, at *3 ("it would be a waste of judicial resources and would increase litigation costs to require employees to file two actions to obtain remedies on the same basic fact situation under federal and state theories") (internal quotation marks omitted).

For the reasons set forth below, Plaintiff respectfully requests that this Court issue an order certifying the Massachusetts Class so that the state law claims and the FLSA claims can be prosecuted together in this action.

## BACKGROUND

As noted above, Defendant concedes that it did not pay overtime to Plaintiff or its other Cable Technicians in reliance upon the motor carrier exemption. As a result, this case primarily concerns the application of the motor carrier exemption under the FLSA, which makes the overtime provision of the FLSA inapplicable to those employees "with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act [of] 1935." *See* 29 U.S.C. § 213(b)(1). The motor carrier exemption under Massachusetts law is substantially similar to the one under the FLSA such that certain employees are exempt from the overtime requirements if they are subject to the jurisdiction of the Secretary of Transportation. *See* M.G.L. c. 151, § 1A(8).[2]

---

[2] Unlike the motor carrier exemption under the FLSA which includes drivers, helpers, loaders and mechanics, the motor carrier exemption under Massachusetts law is limited to only drivers or helpers on a truck, thus providing

### A.     The SAFETEA-LU and the Technical Corrections Act

Prior to August 10, 2005, the motor carrier exemption generally applied to employees who transported property in interstate commerce by motor vehicle and, as a result, regulation of their work hours was confined to the Secretary of Transportation. However, Congress enacted the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU"), Pub. L. No. 109-59, 119 Stat 1144, on August 10, 2005, pursuant to which Congress amended the plain language of the Motor Carrier Act. The amendment removed from the Secretary of Transportation's jurisdiction any employee who does not operate a "commercial" motor vehicle. In the context of this case, a "commercial" motor vehicle is defined as a vehicle with a gross vehicle weight of at least 10,001 pounds.

On June 6, 2008, Congress passed the SAFETEA-LU Technical Corrections Act of 2008 ("TCA"), Pub. L. No. 110-244, 122 Stat. 1572 (2008). The TCA provided up to a one-year limitation on liability under the FLSA for employers between August 10, 2005 and the earlier of (1) the date on which the employer had knowledge of the change in the law under the SAFETEA-LU or (2) August 10, 2006. Specifically, section 306 of the TCA provides:

> LIMITATION ON LIABILITY -- An employer shall not be liable for a **violation of section 7 of the Fair Labor Standards Act** of 1938 (29 U.S.C. 207) with respect to a covered employee if – (A) the violation occurred in the 1-year period beginning August 10, 2005; and (B) as of the date of the violation, the employer did not have actual knowledge that the employer was subject to the requirements of such section with respect to the covered employee.

Pub. L. No. 110-244, 122 Stat. 1572 (emphasis added) (the "Safe Harbor Provision"). Defendant has taken the position that this amendment protects it from liability both under the FLSA and under state law between August 10, 2005, to July 24, 2006, when it allegedly first learned of the

---

protection to more employees than the FLSA. *See* Massachusetts Labor and Workforce Development Opinion Letter, MW-2002-008 (Feb. 26, 2002)

SAFETEA-LU. The parties are in the process of briefing the issue of whether the Safe Harbor Provision limits Defendant's liability under state law, the resolution of which will be the same for all Cable Technicians.

### B.  Summary Judgment, Notice to All Cable Technicians & Mediation

Defendant has conceded that Plaintiff and its other Cable Technicians did not drive motor vehicles weighing over 10,000 pounds, and therefore following the enactment of the SAFETEA-LU, were entitled to overtime compensation. *See* Ex. B to the Stewart Aff., pp. 84-85 (acknowledging overtime owed to technicians driving vehicles under 10,000 pounds and that all vehicles driven by technicians are under that weight). In fact, on November 5, 2007, Judge Ponsor granted Plaintiff's motion for partial summary judgment on liability under the FLSA.[3] *Id.* Following the Court's grant of summary judgment, Defendant did not object to the sending of notice of the pending lawsuit to the putative FLSA class members, which included the Massachusetts Class. Indeed, Defendant joined in the motion to send notice to class members, and this Court allowed that joint motion. *See* Electronic Order dated December 21, 2007. In response to the notice, one-hundred and thirty-three (133) class members filed a Consent to Act as Opt-In Plaintiff to join this collective action and assert FLSA claims against Defendant (the "FLSA Class").

In December 2008, this Court selected a sample of 25 people from the FLSA Class for which it ordered Defendant to produce documents for mediation on April 27, 2009, concerning the number of hours worked by those people during the relevant period. The Court selected this

---

[3] As the Court may recall, there are two periods of time at issue. Between August 10, 2005 and March 17, 2007, Defendant paid Cable Technicians under the same system found to be unlawful by Judge Ponsor at summary judgment. Beginning on March 18, 2007, Defendant instituted a new compensation system that induced Cable Technicians to record less than 40 hours of work time in order to receive a bonus, which Plaintiff contends still violated the overtime laws. Defendant has conceded that both compensation systems were applied uniformly to all Cable Technicians. *See* Ex. A to the Stewart Aff., pp. 15-16 (stating company did not pay technicians overtime before March 2007 on basis of motor carrier exemption); Ex. C to the Stewart Aff., pp. 10 (stating post-March 2007 payment system implemented for all cable technicians).

sampling, with the parties' agreement, so the sample could be used to develop a representative estimate of damages for the mediation. On April 27, the mediation proved unsuccessful.

### C. The  Remaining Issues in the Litigation

At a status conference on May 1, 2009, the Court set a trial date of August 31, and it directed that the 25-person sample previously selected for mediation be used at trial as a representative sample for determining damages for all Cable Technicians. The Court also amended the scheduling order to include motion practice with respect to two discrete legal issues:  i) whether the Safe Harbor Provision of the TCA applies to state law claims; and ii) whether the compensation system Defendant implemented on March 18, 2007 violated the overtime laws. Other than demonstrating that the remaining issues are common for the entire class, those issues are not germane to the present motion for class certification.

### ARGUMENT

## I. STANDARD FOR CLASS CERTIFICATION

The importance of class action procedures is well established:  "Class actions serve an important function in our system of civil justice" because they permit a plaintiff to "vindicate the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost." *Depositors Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 338 (1980). Class actions conserve the resources of both courts and parties by permitting issues potentially affecting all Class members "to be litigated in an economical fashion under Rule 23." *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982).

Rule 23 of the Federal Rules of Civil Procedure determines whether an action may be maintained as a class action and provides:

**RULE 23.  CLASS ACTIONS**

(a)  **Prerequisites.**  One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1)  the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

(b)  **Types of Class Actions.**  A class action may be maintained if Rule 23(a) is satisfied and if:

\*\*\*

(3)  the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

When considering whether a plaintiff has satisfied the requirements for a class action, "[d]oubts should be resolved in favor of certification. . . ."  *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 25 (D. Mass. 2003) (citing *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968) ("if there is to be an error made, let it be in favor and not against maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require").  As explained below, each of the above requirements are met here.

II.  **THE REQUIREMENTS OF RULE 23(a) ARE SATISFIED IN THIS CASE**

A.  <u>**The Class is So Numerous That Joinder is Impracticable**</u>

Fed. R. Civ. P. 23(a)(1) requires that a class be so numerous that joinder of all class members be impracticable.  This does not require that joinder of the class members be

impossible, but only that it be difficult or inconvenient to do so. *See Advertising Specialty Nation Ass'n v. F.T.C.*, 238 F.2d 108, 119 (1st Cir. 1956). Generally a class of 40 or more persons is "found to establish numerosity." *McLaughlin*, 224 F.R.D. at 307 (numerosity satisfied with 51 class members); *In re Relafen Antitrust Litigation*, 218 F.R.D. 337, 342 (D. Mass. 2003) (certifying class of approximately 60 class members); s*ee also Holton v. L. F. Rothschild, Unterberg, Towbin*, 118 F.R.D. 280, 281-82 (D. Mass. 1987) (class with 50 or 60 members was "sufficiently large" to warrant class action treatment). There cannot be any dispute that numerosity is satisfied in this case as Defendant already has identified approximately 150 putative Massachusetts class members.[4]

### B. There are Questions of Law or Fact Common to the Class

As this Court has stated, "[c]ourts have interpreted the 'commonality' prong as a low hurdle, easily surmounted." *Rolland v. Patrick*, No. 98-30208-KPN, 2008 WL 4104488, *4 (D. Mass. Aug. 19, 2008); *Rolland v. Cellucci*, No. A 98-30208-KPN, 1999 WL 34815562, *4 (D. Mass. Feb. 2, 1999) ("[b]ecause a class need only share a single legal or factual issue for class certification, the commonality prerequisite is ordinarily easily satisfied."). Moreover, commonality "refers to the defendants' conduct and is not defeated by individual differences among class members." *Roland*, 2008 WL 4104488, at *4. Here, Defendant has conceded that it had a uniform policy of not paying its Cable Technicians overtime in reliance upon the motor carrier exemption. *See* Ex. A to the Stewart Aff., pp. 15-16; *see also* Ex. C to the Stewart Aff., p. 10 (post-March 207 compensation system applied to all technicians). As a result, there are

---

[4] While Defendant AM Broadband produced a list in December 2008, purporting to list all 150 members of the Massachusetts Class, Plaintiff subsequently discovered people whose names were missing from the list, thus Plaintiff is currently unaware of the identifies of all the members of the Massachusetts Class, but there are at least 150 such class members..

common questions of fact and law with regard to whether Defendant properly classified its Cable

Technicians as exempt, and if not, whether its decision to do so was willful.  Defendant also

contends that the Safe Harbor Provision of the TCA excuses it from liability for overtime with

respect to all Cable Technicians, thus conceding that this issue is common to all members of the

putative class.  In fact, the parties are in the process of briefing the issue of whether the TCA's

safe harbor applies to state law claims on cross-motions for summary judgment, recognizing that

resolution of that issue is common to all Cable Technicians.

As other courts have found in considering similar state law overtime claims, these

common questions are more than sufficient to satisfy the commonality requirement of Rule

23(a)(2).  *See McLaughlin*, 224 F.R.D. at 309 (common employment practices of defendant, and

common issues regarding exempt classification and employer's good or bad faith, establish

commonality); *Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261, 267 (D. Conn. 2002) (commonality

found where each employee performed the same job duties and "each was allegedly underpaid

the overtime compensation they were entitled to receive for their services"); *Wise*, 2006 WL

6110885, at *3 ("To the extent that minor areas of difference arise, the court [can] assure fairness

to defendants through management of the trial"); s*ee also Natchitoches Parish Hospital Service

District v. Tyco International, Ltd.*, 247 F.R.D. 253, 263-64 (D. Mass. 2008) ("rule requires only

that resolution of the common questions affect all or a substantial number of the class

members.").

C.      **Plaintiff's Claims are Typical of the Claims of the Class**

Rule 23(a)(3) requires that the claims or defenses of a class representative be typical of

the claims or defenses of members of the class:

> [A] plaintiff's claim is typical if it arises from the same event or practice or course
> of conduct that gives rise to the claims of other class members, and if his or her

claims are based on the same legal theory.

*Natchitoches Parish Hosp. Serv. Dist.*, 247 F.R.D. at 264; *Abelson v. Strong*, No. 85-0592, 1987 WL 15872, at *2 (D. Mass. July 30, 1987) ("plaintiff's claims are typical of those of the class as a whole if defendants engaged in the same course of allegedly wrongful conduct with respect to the representative class members as to other class members"; *In re Relafen*, 218 F.R.D. at 342-43 (typicality established "by demonstrating that the named plaintiffs' claims arise from the same course of conduct that gave rise to the claims of the absent [class] members") (citations and internal quotations omitted). Put another way, the key inquiry in determining typicality is whether the plaintiff's claims "have the same essential characteristics as the claims of the other members of the class." *McLaughlin*, 224 F.R.D. at 310 (citations omitted).

Plaintiff's claims arise out of Defendant's uniform policy and practice of not paying overtime to its Cable Technicians, which again Defendant has conceded was in place during the relevant period and applied uniformly to all technicians. Ex. A to the Stewart Aff., pp. 15-16; *see also* Ex. C to the Stewart Aff., pp.10 (explaining post-March 2007 compensation system applied to all technicians). With respect to application of the motor carrier exemption, Defendant also has conceded that its Cable Technicians did not drive vehicles weighing over 10,000 pounds, and in light of the SAFETEA-LU it should have been paying overtime to its Cable Technicians. Ex. B to the Stewart Aff., pp. 85-86. In fact, the only issue remaining with respect to liability is the effect, if any, of the Safe Harbor Provision of the TCA, and resolution of that issue will be the same for the Plaintiff and the Massachusetts Class. Thus, Plaintiff's claims are typical of the class.

### D.      Plaintiff Will Adequately Protect the Interests of the Proposed Class

Lastly, Rule 23(a)(4) requires that Plaintiff "demonstrate that his interests will not

conflict with those of the class members and that his counsel is qualified, experienced and able to vigorously conduct the proposed litigation." *Payne*, 216 F.R.D. at 26. A lack of conflict between the class members "follows from . . . findings of commonality and typicality," which as set forth above have been satisfied. *Id.* Here, Plaintiff has the same interest as the other members of the Massachusetts Class in being properly compensated for all overtime hours worked during the relevant period. Thus, the interests of Plaintiff are identical to those of the Massachusetts Class Members.

In fact, Plaintiff has already demonstrated his ability to vigorously prosecute his rights and the rights of the class. For example, Plaintiff has been deposed in this case, he has responded to discovery, and recently he attended mediation on behalf of the FLSA and Massachusetts Classes. Further, he provided declarations and other testimony relied on by counsel to obtain summary judgment. Plaintiff accordingly has protected and will continue to adequately protect the class' interest under Rule 23(a)(4).

With respect to the second prong of 23(a)(4), Plaintiff does not understand Defendant to contest the adequacy of Plaintiff's Counsel in this action. Plaintiff's Counsel has significant experience in prosecuting these types of complex class actions.[5] In fact, as one court in this district has recognized, Plaintiff's Counsel is "thoroughly experienced in class action litigation…." *McLaughlin*, 224 F.R.D. at 310. Plaintiff and his counsel are committed to the vigorous prosecution of this action, which is evidenced by their diligent pursuit of discovery, motion practice and mediation to date.

---

[5] *See, e.g.*, *Aspinall v. Phillip Morris Co., Inc.*, 442 Mass. 381 (2004) (Shapiro Haber & Urmy LLP serving as class counsel); *Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32 (1st Cir. 2003) (same); *Waste Mgmt Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000) (same); *McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304 (D. Mass. 2004) (same); *Lindsay v. Gov't Employee Ins. Co.*, 2004 WL 4012264 (D.D.C. Nov 09, 2004) (same); *Kane v. Gage Merchandising Servs., Inc.*, 138 F. Supp. 2d 212 (D. Mass. 2001) (Shapiro Haber & Urmy LLP serving as FLSA class counsel).

**III.    THREE REQUIREMENTS OF RULE 23(b)(3) ARE ALSO SATISFIED**

To determine whether the questions presented in the case satisfy the predominance

requirements of Rule 23(b), the Court must find:

> the questions of law or fact common to the members of the class
> predominate over any questions affecting only individual
> members, and that a class action is superior to other available
> methods for the fair and efficient adjudication of the controversy

Fed. R. Civ. P. 23(b)(3).

**A.    Common Issues of Liability Predominate Over Any Individual Issues**

There are two main issues in this litigation that are common to the Massachusetts Class

and predominate over any other issues – one, whether Defendant properly classified its Cable

Technicians as exempt under the overtime laws, and if not, whether Defendant's actions were

willful.  Neither of these issues requires examination of individual issues, nor does Plaintiff

understand Defendant to argue otherwise.  In fact, aside from its contention that the Safe Harbor

Provision of the TCA applies to state law claims, which is the subject of cross-motions for

summary judgment along with this motion, Plaintiff does not understand Defendant to be arguing

that Judge Ponsor's finding of liability under the FLSA would be any different with respect to

the Massachusetts Class' state law claims.  Even the issue of whether the TCA's Safe Harbor

Provision eliminates liability for up to one year under Massachusetts law is common to all

members of the Massachusetts Class and thus also predominates over any individual issues.

To the extent Defendant contends that individualized issues concerning damages would

preclude class certification, that argument is without merit.  Rather, it is black letter law that

differences in the amount of damages to be awarded, particularly in wage cases, is not sufficient

to preclude class or collective action treatment.  *See, e.g., Ansoumana v. Gristede's Operating

Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. 2001) (number of hours worked goes only to damages and

such variations do not preclude class certification); *Smilow*, 323 F.3d at 40 ("courts generally find the predominance requirement to be satisfied even if individual damages issues remain"); *McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304 (D. Mass. 2004) (granting class certification for Massachusetts state law overtime claim as the most efficient and superior means of adjudicating class members' claims notwithstanding individual damage determinations); *Morton v. Valley Farm Transport, Inc.*, No. C06-2933(SI), 2007 WL 1113999, *5 (N.D. Cal. Apr. 13, 2007) (individual issues regarding number of hours worked by each person in each day does not predominate over common liability issues, thus certification was appropriate; *Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 576-77 (C.D. Cal. 2008) (individual damages issues does not preclude certification of class; damages can be established by class member estimates); *Salvas v. Wal-mart Stores, Inc.*, 452 Mass. 337, 368 (2008) (affirming class certification despite possibility of individual damages inquiries); *see also Mendoza v. Casa De Cambio Delgado, Inc.*, No. 07CV2579(HB), 2008 WL 3399067, *1 (S.D.N.Y. Aug. 12, 2008) (inquiry on class certification under FLSA is "whether plaintiffs are similarly situated with respect to their allegations that the law has been violated.") (citation omitted). Any contention by Defendant to the contrary would be disingenuous and without merit. *See In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1068 (N.D. Cal. 2007) ("it is manifestly disingenuous for a company to treat a class of employees as a homogenous group for purposes of internal policies and compensation, and then assert that the same group is too diverse for class treatment in overtime litigation.").

**B.      This Action is Superior to Other Methods of Adjudicating the Massachusetts Class Claims and is In the Interest of Judicial Economy**

Finally, Rule 23(b)(3) requires that a class action be superior to other available means of fairly litigating the class members' claims. Fed. R. Civ. P. 23(b)(3) elaborates upon the factors

which the Court should consider in deciding the question:

> (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

In this case, a class action will provide the fairest and most efficient adjudication of the controversy between Defendant and the Massachusetts Class. For starters, as demonstrated by the three years of litigation in this action, the cost of prosecuting individual actions against Defendant would be prohibitive relative to the size of judgment that any individual class member may obtain. Having established liability pursuant to Judge Ponsor's November 5, 2007 ruling, the only major issue remaining to be decided beyond damages concerns whether the Safe Harbor Provision of the TCA affects liability under state law, which is subject to motion practice simultaneous with this motion. Thus, resolution of that issue in this case with respect to all class members would be in the interest of judicial economy. *Wise*, 2006 WL 6110885, at \*3 (agreeing with *McLaughlin* court that "it would be a 'waste of judicial resources and would increase litigation costs' to require employees to file two actions to obtain remedies in the same basic fact situation under federal and state theories."); *Ansoumana*, 201 F.R.D. at 89 ("the interest of the class as a whole to litigate the predominant common questions substantially outweighs any interest by individual members to bring and prosecute separate actions.").

Finally, the last two factors counsel in favor of this action as the superior method of adjudication. Prosecuting the Massachusetts and FLSA claims in the same forum present the most efficient and manageable method to resolve those claims. Defendant cannot reasonably argue that forcing the Massachusetts Class to litigate their claims in a separate Massachusetts forum represents a more efficient method to adjudicate those claims.

As one federal court has put it:

> If [the class members] are denied the opportunity of filing a class suit for their state claims in this court, they could file a suit for these claims in state court. That result, however, would be inefficient. If would be desirable to concentrate all litigation related to plaintiffs' common set of facts in this forum.

*O'Brien v. Encotech Constr. Servs., Inc.*, 203 F.R.D. 346, 352 (N.D. Ill. 2001) (citing cases).

Moreover, the addition of a state law class to a FLSA collective action does not create a problem of manageability. *See, e.g., Ansoumana*, 201 F.R.D. at 89 ("the difficulties likely to be encountered in the management of the class portion of this action are not likely to be different or greater than in the management of the [FLSA] collective portion of this action."). In fact, the Court has already decided that the trial in this case will be conducted based on the evidence and testimony of a representative sample, which already includes a portion of members of the Massachusetts Class. Specifically, 11 of the 25 person sample selected for trial are members of the Massachusetts Class. Therefore, the representative sample can be used easily and efficiently to determine the damages for both the FLSA and Massachusetts classes.

To the extent Defendant contends that an FLSA class and a state law class cannot coexist in one action, that argument has been rejected by several courts in this district. *See McLaughlin*, 2009 WL 890099, at \*2; *Wise*, 2006 WL 6110885, at \*2-3; McLaughlin, 224 F.R.D. at 312; *Campell*, No. 05-11951-JLT (Memorandum and Order dated August 7, 2007).

## **CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiff's motion and certify a class of all persons who worked for Defendant as a Cable Technician in Massachusetts between August 10, 2005 and June 6, 2008.

Dated: May 14, 2009                          Respectfully submitted,


                                             **/s/ Adam M. Stewart**
                                             Thomas V. Urmy, Jr. (BBO #506620)
                                             Todd S. Heyman (BBO #643804)
                                             Adam M. Stewart (BBO #661090)
                                             SHAPIRO HABER & URMY LLP
                                             53 State Street
                                             Boston, MA 02109
                                             Telephone:  (617) 439-3939
                                             Facsimile:  (617) 439-0134
                                             turmy@shulaw.com
                                             theyman@shulaw.com
                                             astewart@shulaw.com


                                             Jeffrey S. Morneau (BBO# 643668)
                                             DONOHUE, HYLAND & DONOHUE P.C.
                                             1707 Northampton Street
                                             Holyoke, Massachusetts 01040
                                             Tel:     (413) 536-1977
                                             Fax:     (413) 538-7138
                                             jmorneau@donohuehyland.com



                          **Certificate of Service**

 I hereby certify that this document, filed through the ECF system, will be sent electronically to
the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper
copies will be sent to those indicated as non-registered participants on May 14, 2009.



                                             **/s/ Adam M. Stewart**
                                             Adam M. Stewart